UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| IRVIN VAN BUREN,  | CASE NO. 1:14-cv-01894-MJS (PC) |
|---|---|
| Plaintiff, | **ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |
| v. | **THIRTY (30) DAY DEADLINE** |
| LT. C. WADDLE, et al., | |
| Defendants. | |

Plaintiff, Irvin Van Buren, is a state prisoner proceeding *pro se* and in *forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has consented to Magistrate Judge jurisdiction. No other parties have appeared in this action. Plaintiff's complaint is before the court for screening.

**I.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court

determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff's claims arise out of events that occurred in April, May, and June 2014, while he was incarcerated at Kern Valley State Prison ("KVSP") in Delano, California. He names the following correctional officers as Defendants: Lt. C. Waddle, Sgt. Niebert, Officer J. Walinga, Officer Ronquillo, and Lt. Lesniak.

His allegations may be summarized as follows:

After being transferred from the Corcoran Special Housing Unit (SHU) to KVSP on April 22, 2014, Plaintiff learned that "2-5" gang members who had attacked him and broken his jaw at Corcoran were now housed on KVSP's C Facility. Plaintiff told several officers he was concerned about his safety on C Facility. He filed two 602 Appeals on the issue, and was placed in administrative segregation until space became available elsewhere. After an Institutional Classification Committee hearing on May 8, 2014, however, Plaintiff was ordered to be released from administrative segregation and housed on Facility C, Building #3 where, allegedly, "2-5" Mexican gang members were "the most highly concentrated…in the entire prison."

On May 14, after being transferred to C Facility, Plaintiff began to feel suicidal. He met with mental health staff member Dr. Patterson and explained his safety concerns. Dr. Patterson communicated these concerns to custody staff, and Plaintiff met with Lt. Waddle to discuss his placement. According to Plaintiff, Lt. Waddle was highly skeptical of his fears and refused to move him, informing him that she was "not going to fill a bed space in ad-seg just because [he was] scared." She stated she could only help him if he would provide information on gang members or their illegal activities.

2

Lt. Waddle disregarded Plaintiff's warnings that he would kill himself, saying, "So what? You're still going back to that yard," and she ordered him back to his cell.

Defendants Ronquillo and Walinga yanked Plaintiff from his seat, grabbed his arms, and started pushing him through the hallway towards the patio. Still clad only in his boxer shorts after the medical appointment, Plaintiff assumed he would be taken to the clinic to retrieve his shoes and clothes, so he "motioned slightly" in the direction of the clinic. The officers responded by pulling Plaintiff "violently and aggressively" toward the gate to C Facility. Plaintiff asked them to slow down because he was not wearing shoes and the hot pavement was burning his feet. He reminded the officers that he needed his clothes. When the officers continued to push Plaintiff toward the gate, he yelled, "Y'all are setting me up!" Defendant Walinga replied, "You're going to kill yourself anyways; you should have thought about that beforehand."

Plaintiff claims that without further provocation, both officers began to punch him in the face and head and tried to slam him to the ground. A third officer, Sgt. Niebert, joined in and "body slammed [P]laintiff to the ground on his face and shoulder," injuring Plaintiff's left rotator cuff. Then all three officers began kicking and punching plaintiff. Plaintiff suffered burns from being pressed to the hot pavement. Plaintiff states that he did not receive medical treatment for several days.

On May 22, 2014, Plaintiff received a rule violation report (RVR) for battery on a peace officer in connection with the alleged assault. Officer R. Gonzalez was assigned to investigate the RVR and gather information on Plaintiff's behalf. Plaintiff drafted questions for witnesses and requested the surveillance video footage of the alleged assault. According to Plaintiff, Officer Gonzalez obtained statements from six witnesses, but denied Plaintiff's request for video footage.

3

Senior Hearing Officer Lt. Lesniak adjudicated the RVR on June 4, 2014. He refused to consider any of the witness statements and again denied plaintiff's request for video footage. Lt. Lesniak found Plaintiff guilty of battery on a peace officer and sentenced Plaintiff to an eighteen month term in the SHU at California Correctional Institution Tehachapi.

**III. ANALYSIS**

**A. Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief

4

that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

Here, Plaintiff's complaint alleges multiple constitutional violations by multiple defendants, but pleads insufficient facts to support all of his claims. While his allegations of excessive force and failure to protect meet the pleading standard set forth in Fed. R. Civ. P. (8)(a)(2), he does not allege sufficient facts to state deliberate indifference and due process claims.  In any event, joinder of all named defendants in this action is improper because the claims against them do not involve common questions of law or fact, as required by Fed. R. Civ. P. 20(a)(2)(B).  Therefore, the court will give Plaintiff leave to amend his complaint to include additional support for his other claims and/or joinder of all defendants; and to bring his cognizable claims in separate actions.

**B. Joinder of Multiple Claims and Defendants under Rules 18 and 20**

Plaintiff attempts to bring multiple constitutional claims against five different defendants.  While Plaintiff may bring multiple claims against one defendant under Fed. R. Civ. P. 18(a), his ability to join multiple defendants to the same action is circumscribed by Rule 20(a)(2).  Under Rule 20(a)(2), a plaintiff may only sue multiple defendants in the same action if at least one claim against each defendant arises out of the same "transaction, occurrence, or series of transactions or occurrences" and there is a "question of law or fact common to all defendants."  Here, plaintiff's various claims arise out of three separate occurences: first, his placement within the prison; second, the alleged assault by Officers Ronquillo, Walinga, and Niebert; and third, the disciplinary hearing that followed the alleged assault.

The joinder of Ronquillo, Walinga, and Niebert in one action may be appropriate under Rule 20(a)(2) because Plaintiff's excessive force claim against each of those three arises out of the same occurrence – the assault they allegedly perpetrated against him as he was being led back to his cell.  The assault and disciplinary hearing are sufficiently factually interrelated to meet the requirements of Rule 20(a)(2): the outcome of the disciplinary hearing depended on Lt. Lesniak's interpretation of the facts of the alleged assault. Therefore, Lt. Lesniak could be an appropriate defendant in this suit under Rule 20(a)(2) should Plaintiff decide to amend his complaint in accordance with the guidelines set out below.

By contrast, Plaintiff's claims against Lt. Waddle exist independently of his other claims.  Despite having occurred on the same day, the interview and the assault are factually unrelated.  The court will give Plaintiff the opportunity to amend his complaint to demonstrate that his claims against Waddle are related to his other claims.  Alternatively, Plaintiff may bring a separate action against Waddle.

The Court now turns to the legal standards Plaintiff must meet if he wants to amend to assert related and legally cognizable claims..

**C. Excessive Force**

Plaintiff alleges an Eighth Amendment violation against Defendants Ronquillo, Walinga, and Niebert for the use of excessive force.

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8–9 (1992).  To state an Eighth Amendment claim, a plaintiff must allege that prison officials caused "unnecessary and wanton infliction of pain." Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001).  The

6

malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether the force caused significant injury. Hudson, 503 U.S. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

To determine whether prison officials used excessive force, the Court considers whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. Guiding the Court's inquiry are the following five factors: 1) the need for applying force; 2) the relationship between the need and the amount of force applied; 3) the extent of the injury inflicted; 4) the nature of the threat reasonably perceived by prison officials; and 5) efforts made to temper the severity of the response. See Whitley, 475 U.S. at 321; Lyons v. Busi, 566 F. Supp. 2d 1172, 1186-1187 (E.D. Cal. 2008). Simple overreaction to a perceived threat is not enough to establish an Eighth Amendment violation. Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002); Wilkins v. Ramirez, 455 F. Supp. 2d 1080, 1093 (S.D. Cal. 2010). "Neither accident nor negligence constitutes cruel and unusual punishment, as '[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments

Clause.'" Williams v. Ramirez, 2009 WL 1327515, *3 (E.D.Cal. May 12, 2009) (quoting Whitley, 475 U.S. at 319).

Plaintiff has stated a cognizable excessive force claim against Defendants Ronquillo, Walinga, and Niebert. Plaintiff alleges that they brutally attacked him in response to what at most was minimal verbal provocation. These facts, accepted as true at the pleading stage, are sufficient to allege a malicious and sadistic use of force to cause harm.

**D. Failure to Protect**

Plaintiff also alleges a cognizable Eighth Amendment claim against Lt. Waddle for failing to protect him against attacks from "2-5" Mexican gang members.

Under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect inmates from assaults at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). To establish a violation of this duty, the prisoner must show first, that he was incarcerated under conditions posing a substantial risk of serious harm; and second, that a prison official knew of and was deliberately indifferent to this risk. Id. at 834. While an inmate cannot meet Farmer's first prong by raising purely speculative fears of attacks from other inmates, Contreras v. Collins, 50 Fed. Appx. 351, 352 (9th Cir. 2002), he need not have actually suffered harm in order to obtain injunctive relief from unsafe conditions. Farmer, 511 U.S. at 845.

Here, plaintiff alleges that members of the "2-5" Mexican gang had attacked him and broken his jaw several months earlier at Corcoran, that these same gang members were now housed on KVSP's C facility, and that he repeatedly requested, of multiple staff members, not to be housed on C facility because he feared for his safety. Although prison staff responded to these requests at first, Plaintiff was eventually moved to an

8

area of C Facility he contends had a particularly high concentration of "2-5" gang members. When Plaintiff raised his safety concerns to Lt. Waddle, she was allegedly dismissive, and offered relief only if Plaintiff cooperated and provided information about illegal activity.

These facts state a cognizable claim for failure to protect against Lt. Waddle: she was aware of the risk that Plaintiff faced at the hands of "2-5" gang members and did nothing to prevent or mitigate it, despite Plaintiff's requests. The recent assault by the "2-5" gang members at Corcoran is sufficient to establish that Plaintiff's risk was not purely speculative. He need not prove that the gang members actually harmed him once he was housed on C Facility.

**E. Medical Indifference**

Plaintiff suggests two potential claims of deliberate indifference to his medical needs: first, that Lt. Waddle was deliberately indifferent to the risk that he would commit suicide; and second, that unspecified defendants deliberately delayed attending to his medical needs after the assault.

The Eighth Amendment of the United States Constitution entitles prisoners to medical care, and a prison official violates the Amendment when he acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To vindicate a claim of deliberate indifference, Plaintiff "must show a serious medical need, demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and establish that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th

Cir. 2006)).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).

For the reasons stated below, Plaintiff has not pleaded sufficient facts for either deliberate indifference claim to be cognizable. .

### 1.  Suicide Risk

Suicide is clearly a serious medical need, and prison officials can violate the Eighth Amendment when they ignore inmates' suicide risk. Lemire v. CDCR, 726 F.3d 1062, 1078-1079 (9th Cir. 2013); Simmons v. Navajo Cty., 609 F.3d 1011, 1018 (9th Cir. 2010).  However, in order for a prison official's inaction to satisfy the deliberate indifference standard, the disregarded risk of suicide must be obvious and substantial, and harm must result from this disregard. Simmons, 609 F.3d at 1018.

While Plaintiff claims that Lt. Waddle was verbally unsympathetic to his assertions that he was suicidal, he does not indicate that she knew that he was in substantial danger of committing suicide, that she was non-responsive to this danger,[1] or that her non-responsiveness led to harm. Without fact allegations that elaborate on these points, a deliberate indifference claim will not lie against Lt. Waddle.

### 2.  Medical Care

Similarly, delay in the delivery of medical care may also constitute an Eighth Amendment violation, but only where the delay was purposeful and caused the inmate harm. Wilhelm v. Rotman, 680 F.3d 1113, 1122-1123 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1095 (9th Cir. 2006); Estate of Prasad ex. Rel Prasad v. County of Sutter,

---

[1] Indeed, Plaintiff met with Defendant Waddle immediately following an appointment with a psychiatrist regarding his suicidal ideation, indicating that his mental health issues were to some degree being addressed.

10

958 F.Supp.2d 1101, 1112-1113 (E.D. Cal. 2013); Schwartz v. Lassen County ex rel. Lassen County Jail, 838 F.Supp.2d 1045, 1053 (E.D. Cal. 2012).

Plaintiff asserts that he was "denied immediate medical treatment for his wounds until some days" after the assault. However, he does not indicate that his wounds were serious. Indeed, other than an offhand reference to his rotator cuff, he does not describe the extent of his injuries at all. Nor does Plaintiff claim that his injuries were made worse by the delay in treatment. Most problematic, however, is that Plaintiff fails to identify the staff members who allegedly ignored his medical needs. The court explains the linkage issue below:

### 3. Linkage

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

11

Plaintiff's complaint does not indicate which prison officials denied or delayed his access to medical care. Plaintiff's amended complaint must name individual defendants, in addition to correcting the factual deficiencies listed above.

**F. Fourteenth Amendment**

Plaintiff argues that his Fourteenth Amendment due process rights were violated when Defendant Lesniak refused to allow him to present eyewitness testimony or video surveillance evidence at his disciplinary hearing.

    **1. Process Due.**

Although a prisoner is not entitled to the "full panoply of rights due a defendant" in a criminal prosecution, he is also "not wholly stripped of constitutional protections when he is imprisoned for a crime." Wolff v. McDonnell, 418 U.S. 539, 545 (1974).  Thus, prisoners "may claim the protections of the Due Process Clause.  They may not be deprived of life, liberty, or property without due process of law." Id., at 556.  At disciplinary hearings where an inmate faces the deprivation of a liberty interest, therefore, the inmate is entitled to limited procedural rights, including 1) advance written notice of at least 24 hours of the disciplinary charges; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985); Wolff, 418 U.S. at 563-567; Alexander v. Schleder, 790 F.Supp. 2d 1179, 1186 (E.D. Cal. 2011). Video surveillance is considered documentary evidence and inmates are generally entitled to have it reviewed by prison officials in disciplinary proceedings. Alexander, 790 F.Supp.2d at 1187; see also Howard v. BOP, 487 F.3d 808, 815 (10th Cir. 2007).

12

However, not every disciplinary proceeding threatens inmates with the deprivation of a protected liberty interest. Sandin v. Conner, 515 U.S. 472, 488 (1995); Resnick v. Hayes, 213 F.3d 443, 448-449 (9th Cir. 2000). A protected liberty interest exists if the hearing disposition would affect the duration of his sentence (e.g. if the inmate faces loss of good time credits). Sandin, 515 U.S. at 487; Wolff, 418 U.S. at 557-558. However, where an inmate simply faces changes to the conditions of his confinement (e.g., transfer to punitive segregation), the disciplinary hearing will implicate a protected liberty interest only if the new conditions work "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003)(quoting Sandin, 515 U.S. at 484).

Courts use three factors to evaluate whether the prisoner suffers such an "atypical hardship": 1) the differences between segregation and the general population; 2) disruptions in plaintiff's environment as a result of his placement in segregation; and 3) the effect on the length of plaintiff's sentence (e.g., by the loss of good time credits). Jackson, 353 F. 3d at 755 (quoting Sandin, 515 U.S. at 486-487)(liberty interest in avoiding SHU existed where "loss of privileges, confiscation of and damage to personal property," and the distance from family and friends, made conditions markedly worse than in general population and caused major disruptions to plaintiff's life); Serrano v. Francis, 345 F.3d 1071, 1079 (9th Cir. 2003)(placement of paralyzed inmate in non-handicapped accessible SHU, where he was not permitted to have a wheelchair, implicated liberty interest); see also Wilkinson v. Austin, 545 U.S. 209, 223-224 (2005)(placement in Supermax implicated liberty interest); Brown v. Or. Dept. of Corrections, 751 F.3d 983, 988 (9th Cir. 2014)(27-month confinement in intensive management unit implicated liberty interest).

13

Here, plaintiff has not properly stated a due process claim because he has not established that his eighteen-month sentence in SHU implicated a protected liberty interest. Lt. Lesniak's refusal to allow Plaintiff to call witnesses or present video evidence at the hearing only violates due process if placement in SHU imposed an "atypical hardship" on Plaintiff compared to placement on KVSP's C Facility. Thus, for Plaintiff's due process claim to be cognizable, he must provide some information regarding the differences in conditions at SHU and C Facility, and the disruptions that the transfer to SHU caused him. The court gives Plaintiff leave to amend his complaint to include the above information. However, other considerations also apply:

### 2. **Heck** Bar

Plaintiff does not indicate whether, as a result of the disciplinary hearing, the length of his overall sentence changed (e.g., by the loss of good time credits). If it did, then his challenge to the disciplinary hearing was not properly brought under §1983.

When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005); Edwards v. Balisok, 520 U.S. 641, 643-644 (1997); Preiser v. Rodriguez, 411 U.S. 475, 477 (1973); Thornton v. Brown, 757 F.3d 834, 842 (9th Cir. 2013); Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir. 2003). Thus, when challenging a disciplinary decision that lengthened his sentence, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck v. Humphrey, 512 U.S. 477, 486–87 (1994). Without such prior nullification, the inmate "may not use §

14

1983 to challenge 'the very fact or duration' of his confinement." Thornton, 757 F.3d at 841.

This limitation on the availability of §1983 to vindicate procedural flaws in prison disciplinary proceedings, called the Heck bar, does not apply, however, where the proceeding only changes the *conditions* – not the duration – of confinement. Thornton, 757 F. 3d at 842; Ramirez, 334 F.3d at 858.  Punitive segregation is considered to be a condition of confinement, because more restrictive placement does not affect the total length of the inmate's incarceration.

Therefore, the validity of Plaintiff's § 1983 claim depends on whether the only result of his disciplinary hearing was the eighteen-month term in SHU. If it was, then the hearing merely affected Plaintiff's conditions of confinement, and his due process claim, if he chooses to amend it, could still be brought under § 1983.  If the hearing also revoked good-time credits or otherwise extended Plaintiff's total jail time, then the Heck bar would apply, and Plaintiff could only challenge the results of the hearing in a writ of habeas corpus.

**IV. CONCLUSION**

Plaintiff's complaint properly states an excessive force claim against Defendants Ronquillo, Walinga, and Niebert and a failure to protect claim against Defendant Waddle. He does not state deliberate indifference or due process claims against these or any other defendant.  Because Waddle and the other defendants were not properly joined pursuant to Rule 20(a)(2), Plaintiff may not proceed on both cognizable claims in the same action.

The Court grants Plaintiff the opportunity to correct the deficiencies analyzed above in an amended complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000);

Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaint). Moreover, unless Plaintiff's amended complaint alleges facts that connect his claims against Waddle to his claims against Ronquillo, Walinga, and Niebert, he must sue Waddle separately.

An amended complaint would supersede the prior complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 f.2d 565, 567 (9th Cir. 1987). Thus, it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

**V. ORDER**

It is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his Complaint, filed December 1, 2014;

2. Plaintiff's Complaint is dismissed;

3. Plaintiff shall file an amended complaint within thirty (30) days; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will dismiss this action, with prejudice, for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated:   December 22, 2014           /s/ *Michael J. Seng*
                                      UNITED STATES MAGISTRATE JUDGE

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28