UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVIN VAN BUREN,<br><br>　　Plaintiff,<br><br>　v.<br><br>C. WADDLE, et al.,<br><br>　　Defendants. | Case No.  1:14-cv-01894-DAD-MJS (PC)<br><br>**ORDER DENYING IN PART, GRANTING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS**<br><br>**(ECF No. 32)**<br><br>**FOURTEEN DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 28 U.S.C. § 1983. The case proceeds against Defendants Waddle, Neibert, Ronquillo, and Walinga for excessive force and against Defendant Waddle for failure to protect, all in violation of the Eighth Amendment of the Constitution, and against Defendant Lesniak for violating Plaintiff's Fourteenth Amendment procedural due process rights during a rules violation hearing (ECF No. 7.)

Before the Court is Plaintiff's March 7, 2016, motion to compel discovery. (ECF No. 32, hereafter "Pl. Mot. to Compel.") Defendants filed their opposition to Plaintiff's motion to compel on March 30, 2016. (ECF No. 38, hereafter "D. Opp'n.") Plaintiff did not file a reply. The matter is submitted pursuant to Local Rule 230(/).

**I.   PROCEDURAL HISTORY**

On October 19, 2015, Plaintiff propounded his first set of discovery on Defendant

("Set 1"), including six Requests for Production of Documents ("RPD"). Pl. Mot. Compel, Ex. A. On December 17, 2015, Defendants responded to Plaintiff's Set 1. Pl. Mot. to Compel, Ex. B. On December 31, 2015, Plaintiff propounded his second set of discovery ("Set 2"), which included two more RPDs. Pl. Mot. to Compel, Ex. C. On February 16, 2016, Defendants submitted responses to Plaintiff's Set 2. Pl. Mot. to Compel, Ex. E.

Dissatisfied with Defendants' responses to certain RPDs propounded in Set 1 and Set 2, Plaintiff filed a motion to compel on March 7, 2016. Defendants filed their opposition on March 30, 2016. After an initial review of these filings, the Court scheduled a telephonic discovery dispute conference ("TDDC") to try to resolve the disputes informally. In anticipation of the TDDC, the Court directed Defendants to submit for *in camera* review: (1) reports in Defendants possession, custody, or subject to their control of the investigation of the incident at issue in this case; (2) a list of all identified witnesses to the incident at issue and copies of all statements in Defendants possession, custody, or subject to their control given by or taken from witnesses to the incident; and (3) a listing by date, type and duration of all known incidents of gang violence and/or gang-related lockdowns in C facility during the time period from February 1, 2014 to May 30, 2014.

On June 17, 2016, Defendants submitted the following documents for the Court's review: CDCR Form 115 Rules Violation Reports; CDCR Form 837 Crime Incident Reports; CDCR Forms 3036, 3034, 3014, 3012, 3011, and 3010 (collectively, "Use of Force Critique documents"); a holding cell log from May 14, 2014; and a general chrono reflecting the date and time Plaintiff viewed his videotaped interview. Defendants explained that they were unable to provide lockdown records because they were still trying to compile them.

On June 22, 2016, the parties, Irvin Van Buren, appearing pro se, and Deputy Attorney General Gabriel Ullrich, on behalf of all Defendants, participated in the

telephonic discovery dispute conference.

## II. **LEGAL STANDARD**

The discovery process is subject to the overriding limitation of good faith. Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242, 1246 (9th Cir.1981). Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, and for good cause, the Court may order discovery of any matter relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Id.

A party may serve on any other party a request within the scope of Rule 26(b) to "produce and permit the requesting party or its representative to inspect, copy, test, or sample" any documents, electronically stored information, or tangible things "in the responding party's possession, custody or control." Fed. R. Civ. P. 34(a)(1). A party may move for an order compelling production where the opposing party fails to produce documents as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv).

Generally, if the responding party objects to a discovery request, the party moving to compel bears the burden of demonstrating why the objections are not justified. E.g., Grabek v. Dickinson, No. CIV S-10-2892 GGH P., 2012 WL 113799, at *1 (E.D. Cal. Jan. 13, 2012); Ellis v. Cambra, No. 1:02-cv-05646-AWI-SMS (PC), 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008). This requires the moving party to inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious. Grabek, 2012 WL 113799, at *1; Womack v. Virga, No. CIV S-11-1030 MCE EFB P., 2011 WL 6703958, at *3 (E.D. Cal. Dec. 21, 2011).

The court must limit discovery if the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii). "In each instance, the determination

3

whether . . . information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26 Advisory Committee's Note (2000 Amendment) (Gap Report) (Subdivision (b)(1)).

### III. DISCUSSION

Plaintiff's motion to compel seeks the production of the following evidence. After reviewing the parties' filings and discussing each party's position during the TDDC, the Court rules as follows with regard to each such request:

**A.   RPD No. 5, Set 2:**

**Request (ECF 32 at 13):**
For the reasons that Plaintiff **does not** know the names of these inmates who was (sic) in the C Facility Medical Clinic at the time of the incident involving the Plaintiff, but may have been a witness to this incident in question (sic); Plaintiff requests of the defendant to produce to Plaintiff: **the names of all the inmates who was** (sic) **scheduled and transported to the C Facility Medical Clinic on the date of 5/14/2014 and was held in the C Facility Medical Clinic's holding cell.**

**Response (ECF No. 32 at 17):**
Responding Party objects that the request is outside the scope of discovery, as the incident did not happen at the C Facility Medical Clinic, and that the request might seek private medical information. Without waiving the objection, Responding Party is not aware of any responsive, discoverable documents.

Plaintiff argues the excessive force in question occurred on the C Facility Patio, which, Plaintiff claims, is adjacent to the medical clinic. Plaintiff believes there are inmates who were in the medical clinic at the time who may have witnessed the incident. Plaintiff seeks only those inmates' identities, not any other information about them or their reason for being in the area. At the TDDC, Plaintiff acknowledged that he did not know whether any such inmates witnessed the attack; he knows only that some witnessed his injuries after the fact and may have been in a position to have observed the event.

Defendants raise several objections. First, they argue that Plaintiff's request

improperly seeks confidential health information. Also, they argue that to seek out, interview, and depose these witnesses would be costly, time-consuming, burdensome and oppressive. Finally, Defendants argue that the witnesses can make no relevant contribution because the alleged excessive force event occurred in a location not viewable from the medical clinic. They propose photographing the sightlines between the medical clinic and the patio where the event occurred to show the latter was not within sight of the former. Defendants also offered to provide the names of prison employees working in the medical clinic at the time.

The Court concludes that identifying individuals in the vicinity would not reveal medical or other confidential information. It also concludes that Defendants' proposal to provide photographs showing whether or not the Facility Patio is viewable from the medical clinic would likely precipitate a mini trial as to the objectivity of the photographs and thus was not the most efficient or productive way to proceed at this time. It seems Defendants could relatively easily and economically determine which individuals were in the clinic in the 30 or so minutes preceding and following the time of the alleged incident. Defendants were directed to so inquire and report, at or prior to a continued 4:00 PM, July 20, 2016 TDDC, their success or inability in doing so. If potential witnesses, if any, are identified, the parties, with Court assistance if need be, can undertake to determine whether any purport to have seen the incident and, if so, if they recall what they saw.

Ruling on this request will therefore be deferred until the continued July 20, 2016 TDDC.

**B.  RPD No. 6, Set 1:**

**Request (ECF 32 at 13):**
Plaintiff requests of Defendant to produce for inspection reasons; (sic) **"all documentation" of incident reports and lock-downs statas (sic) reports of C Facility program yard during the timeframe period of February 1, 2014 through May 30, 2014.**

**Response (ECF No. 52-1 at 5):**

    Responding Party objects that the request is outside the scope of discovery, as the incident does not pertain to any lockdown and Responding Party is informed that the lockdown ended a day before the incident. Responding Party will not comply with the request.

Plaintiff argues that the lockdown records will show the frequency of C Facility lockdowns attributable to high levels of gang violence which in turn put Defendants on notice of the heightened risk to Plaintiff of a gang-related attack and thus should have led Defendants to take additional steps to protect Plaintiff from that risk.

Defendants argue that lockdown records are irrelevant to Plaintiff's claims, which do not involve gang-related violence. Moreover, they claim, lockdown records are voluminous, and it would be burdensome to produce them.

Plaintiff's failure to protect claim proceeds on his allegation that Defendant Waddle failed to protect him from a risk of harm at the hands of prison gang members by housing him in the C Facility alongside Plaintiff's known enemies.[1] The correlation Plaintiff seeks to establish between the prison lockdown records and the risk to Plaintiff's safety, however, is tenuous as best and will not warrant the production of all lock down records. The alleged attack at issue came at the hands of prison staff. There is no allegation here that Plaintiff suffered an attack by any member of any gang. Plaintiff fear of the "Mexican 2-5" gang and Defendant Waddle's alleged failure to protect him from that gang is not alleged to have caused any actual damage to Plaintiff while he was housed at KVSP. Even if the contrary were true, the frequency of lock-downs would shed little light on the reasonableness of Plaintiff's concerns, and much less on Defendant's imputed knowledge of the validity of those concerns and the need to protect him against them. In short, the Court concludes that the potential relevancy of such lockdown records is so remote as not to justify the cost and time of producing them. Plaintiff's request for lockdown records will therefore be denied. However, as

---

[1] During the TDDC, there was a dispute over the basis for Plaintiff's Eighth Amendment failure to protect claim against Defendant Waddle. Plaintiff argued that Defendant Waddle failed to protect him from gang violence. Defendants believed Defendant Waddle was charged with failing to protect Plaintiff from violence at the hands of Defendants Ronquillo, Walinga, and Neibert. Review of the pleadings shows that Plaintiff is correct.

6

noted during the TDDDC, nothing in this ruling precludes Plaintiff from testifying as to his own knowledge of the number of lockdowns if the Court finds that knowledge to be relevant.

### C. RPD No. 1, Set 2:

**Request (ECF No. 32 at 21):**
For the reasons that Plaintiff does not have in his current possession (sic), Plaintiff requests that Defendant produce for him; (sic) **the photos of all the injuries Plaintiff suffered on the date of May 14, 2014 during the incident in question.**

**Response (ECF No. 32 at 27):**
Responding Party objects that the request is argumentative and Responding Party denies that Plaintiff was injured in the incident. Without waiving the objection, Responding Party will comply with the request in whole and produce the two photographs taken of Plaintiff shortly after the incident.

During the TDDC, Plaintiff acknowledged that the issue regarding the photographs had been resolved and he withdrew his request for an order related thereto. Plaintiff's request will therefore be denied as moot

### D. RPD No. 2, Set 2

**Request (ECF No. 32 at 21-22):**
For the reasons that Plaintiff does not have access to the information in question, Plaintiff requests that Defendant produce for Plaintiff; (sic) **(1) a list of all the surveillance cameras depicted on the lower C facility from the Salley Port patio area, as well as on the main lower yard area, and (2) requesting a diagram photo of the two areas depicting the locations of all the cameras in question.**

**Response (ECF No. 32 at 27-28)**:
Responding Party objects that the request is not proportional to the needs of the case, as Defendants have already submitted a sworn declaration from the institution's person most qualified that the incident was not video recorded and the C facility Patio is not video recorded. Responding Party further objects that the request calls for information protected under the official information privilege, as the request calls for information protected under the official information privilege, as the request for information about inmate surveillance calls for state secretes (sic) and invokes government privilege. *Kerr v. U.S. Dist. Ct.,* 511 F.2d 192 (9th Cir. 1975). Finally, Responding Party is not aware of any "list" of the surveillance cameras to produce or a diagram photograph of "all the cameras in question,"

> therefore there is nothing in Responding Party's possession, custody or control to produce. Plaintiff is directed to the Declaration of B. Hancock in support of Defendant Lesniak's motion for summary judgment, which explains that there are no video recording devices on the C Facility Patio or anywhere in the institution which record the C Facility Patio. No production will be made in response to this request.

As an initial matter, the Court agrees (and Plaintiff did not dispute) that providing an inmate with a diagram depicting the locations of video surveillance cameras within the prison could create a serious security issue. Plaintiff's request for a diagram of the video cameras will therefore be denied.

Defendants assert that no video camera filmed the area where the incident took place. They have submitted, in support, a sworn declaration from Litigation Coordinator B. Hancock, the individual charged with maintaining the video surveillance and recording systems at KVSP. (ECF No. 18-1.) Plaintiff concedes that he has no direct evidence to the contrary; he simply finds it unlikely that the area would not have been under surveillance.

The Court cannot compel Defendants to produce that which they declare under penalty of perjury does not exist. However, for reasons discussed below,[2] Defendants are well advised to renew their investigation into the possible existence of a videotape of the incident and, of course, give notice if that investigation reveals that any such video exists or ever existed. Defendants shall advise of the results of this investigation at the July 20, 2016 TDDC.

### E. Documents Reviewed *In Camera*

Plaintiff and Defendants confirmed that Plaintiff has received a copy of every document reviewed *in camera* except for those within the Use of Force Critique. Defense counsel objected to turning over the Use of Force Critique documents on the ground that they would reveal the nature and manner of investigation of such matters in a way that prisoners, aware of same, could conceivably create a scenario which would

---

[2] See footnote 3, below.

be more likely to expose a correctional officer to criticism.

With one exception, the Court agrees with Defendants' position. The forms contain checklists of the numerous factors the institution considers when conducting internal review of staff use of force incidents. To disclose these to an inmate could enable him to tailor his excessive force claims to conform to the factors on the lists, thereby making them appear more credible. Moreover, with the same single exception mentioned above, the Court's *in camera* review of those documents revealed nothing that was favorable to, or would support or corroborate, directly or indirectly, any of Plaintiff's claims. In short, the security concerns expressed by Defendants far outweigh any interest Plaintiff may have in reviewing the documents.

The twice-mentioned "exception" is the CDCR Form 3014 "Use of Force Critique, Report of Findings – Inmate Interview," signed by Lt. R. Molina, and dated May 26, 2014. This document contains statements attributed to Plaintiff by prison officials investigating his allegations of excessive force. It does not appear to contain any privileged information or material in need of protection for security reasons. Moreover, Defense counsel advised that while the CDCR does not typically provide Use of Force Critique forms to prisoner litigants, Plaintiff's CDCR Form 3014 appeared "innocuous." Therefore, Defendants shall provide Plaintiff with a copy of the May 26, 2014 CDCR Form 3014[3], but no other Use of Force documents.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, as to Plaintiff's motion to compel (ECF No. 32) IT IS HEREBY ORDERED as follows:

1. The ruling on Plaintiff's request for the names of any inmates present in the medical facility on May 14, 2014 is DEFERRED until the July 20, 2016

---

[3] On the second page of that form, there is a checklist of the types of evidence a reviewing authority may consider in determining whether Plaintiff was subjected to excessive force. One of the items checked as having been reviewed in this case is "Incident Videotape." On its face, this statement is inconsistent with the Hancock Declaration discussed above. Hence, the above-noted need for further investigation into the possible existence of a video of the incident.

9

telephonic discovery dispute conference, pending Defendants' further investigation;

2. Plaintiff's request for lockdown records spanning the period from February 1, 2014 to May 30, 2014 is DENIED;

3. Plaintiff's request for additional photographs of his injuries is DENIED as moot;

4. Plaintiff's request for a diagram depicting the locations of surveillance cameras within KVSP is DENIED;

5. Plaintiff's request for information regarding surveillance cameras on the C Facility Patio is GRANTED in part: Defendants are directed to further inquire into the presence of surveillance cameras on the C Facility Patio and disclose their findings to Plaintiff; and

As to the documents provided to the Court for in camera review, IT IS HEREBY ORDERED:

6. Defendant shall provide Plaintiff with a copy of the CDCR Form 3014 (the Inmate Interview) within fourteen days of this order;

7. Defendants are not required to turn over CDCR Forms 3036, 3034, 3012, 3011, and 3010 to Plaintiff.

IT IS SO ORDERED.

Dated:   June 28, 2016                  /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE