UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVIN VAN BUREN, | Case No.  1:14-cv-01894-DAD-MJS (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT LESNIAK'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| C. WADDLE, et al., | **(ECF No. 18)** |
| Defendants. | **FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT LESNIAK** |
| | **(ECF No. 19)** |
| | **ORDER DENYING PLAINTIFF'S REQUEST TO STAY THE PROCEEDINGS** |
| | **(ECF No. 20)** |
| | **ORDER GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME AND LEAVE TO FILE SURREPLY** |
| | **(ECF No. 22)** |
| | **FOURTEEN DAY OBJECTION DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. The case proceeds on Plaintiff's first amended complaint ("FAC") against Defendants Neibert, Ronquillo, and Walinga for excessive force under the Eighth Amendment, against Defendant Waddle for excessive force and failure to protect under the Eighth Amendment, and against Defendant Lesniak for violating Plaintiff's procedural due process rights under the Fourteenth Amendment during a rules violation hearing.  (ECF Nos. 4 & 7.)

## I.   Procedural History

On October 23, 2015, Defendant Lesniak filed a motion for summary judgment, arguing that he did not violate Plaintiff's due process rights in connection with Plaintiff's rule violation report ("RVR") hearing.  (ECF No. 18.)  On November 12, 2015, Plaintiff filed an opposition along with a request to stay the proceedings pending the close of discovery.  (ECF No. 20.)  On November 19, 2015, Defendant Lesniak filed his reply. (ECF No. 21.)

On December 2, 2015, Plaintiff filed a motion seeking leave to file a surreply and sought a twenty-one day extension of time in which to do so.  (ECF No. 22.)  That motion is also pending before the Court.  Defendant filed no opposition. On December 16, 2015, Plaintiff filed a surreply. (ECF No. 25.)

On November 12, 2015, Plaintiff filed a cross-motion for partial summary judgment against Defendant Lesniak, on the basis that the undisputed facts show that Defendant Lesniak denied Plaintiff due process as a matter of law.  (ECF No. 19.) Defendant Lesniak did not file an opposition and the time for doing so has passed.  That matter is deemed submitted.  E.D. Cal. Local Rule 230(*l*).

## II.   Plaintiff's Motion for Leave to File a Surreply

Plaintiff asks the Court for leave to file a surreply to Defendant's summary judgment motion.  (ECF No. 22.)

Parties are generally not permitted to file surreplies. E.D. Local Rule 230 (allowing for a motion, an opposition, and a reply).  However, Courts have granted a party leave to file a surreply "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." Hill v. England, No. CVF05869RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005).

Here, Plaintiff argues that Defendant Lesniak's reply brief raised a plethora of new arguments in response to Plaintiff's opposition.  Indeed, the only argument Defendant Lesniak raised in his summary judgment motion pertained to the existence of video surveillance footage.  The remaining arguments he offers in support of his motion appear for the first time in his reply brief.

Plaintiff presents valid reasons for permitting him to respond to these arguments. Moreover, Defendant does not oppose Plaintiff's request. Therefore, Plaintiff's motion for leave to file a surreply will be granted.  The Court will also grant, nunc pro tunc to December 2, 2015, Plaintiff's request for a twenty-one day extension of time to file his surreply.

## III.   Plaintiff's Motion to Stay the Proceedings

In his opposition to Defendant Lesniak's summary judgment motion, Plaintiff asks the Court to postpone its decision on Defendant Lesniak's summary judgment motion to await the close of discovery.  (ECF No. 20 at 11.)  Specifically, Plaintiff believes further discovery will reveal evidence showing that a video recording of the May 14, 2014 incident did exist at one point.  Defendant argues the facts already on the record present undisputed evidence that no video ever existed, and so a stay of proceedings for further discovery on this issue would be pointless.

Federal Rule of Civil Procedure 56(d) permits the Court to delay consideration of a motion for summary judgment to allow parties to obtain discovery to oppose the motion. A party asserting that discovery is necessary to oppose a motion for summary

judgment "shall provide a specification of the particular facts on which discovery is to be had or the issues on which discovery is necessary." Local Rule 260(b).

The Court set a discovery deadline of May 1, 2016. (Discovery and Scheduling Order (ECF No. 17.)) At the time Defendant Lesniak filed his summary judgment motion, discovery had not yet closed.  Since that time, the parties have exchanged further discovery, Plaintiff has filed a motion to compel, and the parties have participated in two telephonic discovery dispute conferences ("TDDC") with the undersigned.  (ECF Nos. 32, 42, & 47.) The issue of the video recording has been discussed at length. Prior to the first TDDC, Defendants submitted, for *in camera* review, a document indicating prison officials had viewed a video in evaluating Plaintiff's excessive force claims against Defendants Walinga, Ronquillo, and Neibert. Defendants subsequently explained at the second TDDC that the video referred to was a videotaped interview with Plaintiff taken after the alleged incident.[1]  Plaintiff has not disputed Defendants' assertion, and he has presented no evidence to counter Defendant Lesniak's assertion that no video exists. Nor does he present any argument as to how or why further discovery would lead to the production of video evidence. The Court believes this matter is now settled.

Plaintiff has not identified any further outstanding discovery necessary to oppose Defendant Lesniak's summary judgment motion. Therefore, Plaintiff's request to stay the proceedings pursuant to Rule 56(d) to obtain discovery to respond to Defendant Lesniak's summary judgment motion will be denied.

---

[1] On August 23, 2016, Defendants filed a supplemental brief in anticipation of a third TDDC. (ECF No. 53.)  Attach to that brief is a sworn declaration of Lieutenant Molina reaffirming Defendants' assertion that the video referred to was a videotaped interview of Plaintiff, not a video of the incident. (Molina Dec. (ECF No. 53-5) ¶ 2-3.)

**IV.    Legal Standard for Summary Judgment**

Any party may move for summary judgment, and "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." Id. at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323). Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." Id.  (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence.  See Liberty Lobby, 477 U.S. at 255.  Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. Only admissible evidence may be considered in deciding a

5

motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Soremekun, 509 F.3d at 984.

## V.   Facts

The following facts are pertinent to both Defendant Lesniak's summary judgment motion and Plaintiff's cross-motion for summary judgment.  The Court finds the following facts are undisputed unless otherwise noted.

In April 2014, Plaintiff was transferred to Kern Valley State Prison ("KVSP") in Delano, California. (FAC ¶ 1.)  Almost immediately, he began to fear for his safety at the hands of other inmates. Id. ¶ 1-2. On May 14, 2014, Plaintiff went to the office of Defendant Waddle to express his fears.  Id. ¶ 7.  She dismissed his concerns and directed Defendants Neibert, Walinga, and Ronquillo to escort Plaintiff back to his housing unit.  Id. ¶ 12.  During the transport, a physical altercation ensued.  Id. ¶ 13. Plaintiff states he was assaulted by Defendants Neibert, Walinga, and Ronquillo while they were in the process of transporting Plaintiff to his cell.  Id. ¶¶ 13-16.  Defendants Neibert, Walinga, and Ronquillo, in turn, claim it was Plaintiff who became combative and assaultive. Id. ¶ 20.

On May 22, 2014, Plaintiff received a RVR for Battery on a Peace Officer in connection with the May 14, 2014 incident. Id. ¶ 20. Officer R. Gonzalez was assigned as the investigative employee ("IE") to investigate the RVR and gather information on Plaintiff's behalf. Id. Plaintiff drafted questions for witnesses and requested surveillance video footage of the alleged assault. Id. ¶ 21. On Plaintiff's behalf, Officer Gonzalez asked the following questions of witnesses and obtained the following statements:

1.   Inmate Bell [Plaintiff's cellmate]:
     Q1: On 05/14/2014, under what circumstances was [Plaintiff] . . .escorted from the cell?
     A1: "Suicidal, not stable"
     Q2: Which Officers did [Plaintiff] inform of his concerns?
     A2: "Correctional Officer Salazar."

2.  Correctional Officer Salazar:
    Q1: On 05/14/2014, while doing your Close A Count when you passed [Plaintiff's] cell, what did he state to you?
    A1: "He stated he was Suicidal/Homicidal."
    Q2: What did you do at that time about his remarks?
    A2: "Placed him in handcuffs and put him in the shower."

3.  Correctional Officers J. Ronquillo and J. Walinga:[2]
    Q1: Under what circumstances, how did you first come in contact with [Plaintiff]?
    A1: "During the escort."
    Q2: Before his attack, when you were escorting [Plaintiff] back to his assigned cell, where were you escorting him from?
    A2: "The program Office."
    Q3: Before the escort, where did you first pick him up from?
    A3: "The Program Office."
    Q4: How was [Plaintiff] dressed, what was he wearing?
    A4: "I don't remember."
    Q5: Why didn't you use your pepper spray on [Plaintiff] when you claimed (sic) he attacked you?
    A5: "No pepper spray was needed."

4.  Correctional Lieutenant C. Waddle:
    Q1: On 05/14/2014, prior to this incident in question, how is it that you first came into contact with [Plaintiff], under what circumstances?
    A1: "I conducted an interview with [Plaintiff]."
    Q2: How was [Plaintiff] dressed when you first saw and interviewed him?
    A2: "I don't remember."
    Q3: When [Plaintiff] mentioned to you about his safety concerns and that he has a pending law suit (sic) on this same issue, what was your response?
    A3: "[Plaintiff] did not mention safety concerns or a law suit (sic). [Plaintiff] stated he was not getting along with his cellmate and needed a bed move."
    Q4: When [Plaintiff] mentioned to you that he wasn't supposed to be on this yard in the first place due to a documented enemy being on the yard and that he's requesting to resend (sic) his [Special Needs Yard] Status, what was your response.?
    A4: "[Plaintiff] did not mention any of the above."
    Q5: Why did you order [Defendants Ronquillo and Walinga] to escort [Plaintiff] back to his assigned cell?
    A5: I did not order anyone to escort [Plaintiff] back to his cell."

---

[2] It is not clear if Officers Ronquillo and Walinga were interviewed together and gave joint answers or if they were interviewed separately and simply gave identical answers.

Q6: Did you know [Plaintiff] was in a suicidal status (sic) in [a] C Facility Clinic Holding Cage just prior to you interviewing him?

A6: "[Plaintiff] was not on suicidal status prior to my interview."

5.  Dr. Patterson:

Q1: When you first met with [Plaintiff] 2 days prior to 05/14/2014 . . . did he mention anything to you about his feelings of being uncomfortable about being on a C Yard due to Enemy and Safety Concerns?

A1: "I first met with [Plaintiff] on 05/13/2014, in C3. [Plaintiff] stated, 'I should not be here because of Enemy Concerns.' [Plaintiff] stated that he had previously reported these concerns at his recent [inmate classification committee hearing]."

Q2: On 05/14/2014, the day that [Plaintiff] was in [the] C Facility Clinic holding cage for suicidal concerns, did you speak with him?

A2: "Yes."

Q3: Why did [Plaintiff] mention he was suicidal in the first place?

A3: "No, he reported that he was not suicidal but rather that he had safety concerns."

Q4: Did [Plaintiff] mention anything about his safety concerns then?

A4: "No, he just had safety concerns."

Q5: What did you do or decide and who did you speak with [on Plaintiff's] behalf about his safety concerns issue?

A5: "I spoke with C Yard Program sergeant (I believe 3[rd] watch). I requested that custody call me after the safety issues were discussed at which time a suicidal assessment would then be completed if deemed advisable."

(Rules Violation Report – Part C (ECF No. 20, Ex. B at 20-22.))

Officer Gonzalez denied Plaintiff's request for video footage. Id. ¶ 22.

Defendant Lesniak adjudicated the hearing on Plaintiff's RVR. (FAC ¶ 26; Rules Violation Report – Part C (ECF No. 20, Ex. A at 15.))

There exists a dispute over when Plaintiff's RVR hearing occurred.  Plaintiff believes it occurred on June 20, 2014.  Id. ¶ 26.  Defendant Lesniak, relying on the paperwork documenting the RVR hearing, maintains the hearing occurred on June 4, 2014. (ECF No. 20, Ex. A at 15-17.)

Plaintiff did not have any disabilities that would have precluded him from representing himself at the hearing.  Id. at 15.  Plaintiff received copies of the documents used as evidence in his hearing at least 24 hours in advance.  Id.  Plaintiff asked to call witnesses at the hearing, a request which Defendant Lesniak denied.  Id.

at 16.

Beyond these facts, the parties dispute what happened during the hearing. According to Plaintiff, Defendant Lesniak outright refused to consider Plaintiff's written statement or the statements of any of his witnesses.  (FAC ¶ 29.) Plaintiff also alleges Defendant Lesniak refused to view videotaped footage of the incident, stating Defendant Lesniak said he "[didn't] need to see the tape footage because it's irrelevant." (FAC ¶ 28.)

Defendant Lesniak, relying on the declaration of Litigation Coordinator B. Hancock, maintains he did not view video surveillance footage because none existed. (Hancock Dec. (ECF No. 18-1) ¶ 4.)   Defendant Lesniak further points to the RVR hearing report, in which he states he "reviewed the IE Report."  (ECF No. 20, Ex. A at 16.) Therein, he also noted that he advised Plaintiff that Plaintiff could request witnesses for the hearing. Id.  In the RVR hearing report, Defendant Lesniak noted that Plaintiff requested Officer Salazar, Dr. Patterson, Lieutenant Waddle, and a "C Clinic Officer"[3] as witnesses.  Id.  The report reflects that Defendant Lesniak denied the four witnesses, based on "no further relevance." Id.  Defendant Lesniak states in the report that he considered the following evidence in making his determination: (1) Plaintiff's written statement; (2) Defendants Ronquillo's, Neibert's, and Walinga's written reports; (3) documentation of Ronquillo's injuries; and (4) photographs of Ronquillo's injuries. Id.

Plaintiff was found guilty of Battery on a Peace Officer and assessed a 150 day loss of behavioral/work credits and a ten day loss of privileges.  (ECF No. 20, Ex. A at 16-17.) Plaintiff was also referred for possible placement in the segregated housing unit ("SHU"); he ultimately received an eighteen month SHU term.  (FAC ¶ 31).  Plaintiff

---

[3] The RVR Report does not state which "C Clinic Officer" Plaintiff requested.

does not say when he was placed in the SHU.

As Plaintiff is a life prisoner, he will not be affected by the loss of good time credits.  (FAC ¶ 32.)  Plaintiff states, rather, that his confinement in the SHU caused him an undue burden because he lost the privileges of inmates in the general population, such as the ability to own a radio or television and have regular "contact" visits with guests. Id. Plaintiff's family was also forced to travel longer distances to visit Plaintiff since he was transferred to a different facility as a result of his confinement in the SHU. Id.

On July 24, 2014, Plaintiff filed an Inmate Appeal 602 Form ("602") contesting the results of the RVR hearing for due process reasons, claiming Defendant Lesniak improperly withheld video surveillance footage and Plaintiff's witnesses' statements during the hearing.  (Inmate/Parolee Appeal (ECF No. 20, Ex. C at 24-27.))  Plaintiff also accused Defendant Lesniak of falsifying his RVR documents by recording the hearing date as June 4, 2014 rather than June 20, 2014. Id.

On September 2, 2014, Chief Deputy Warden C. Pfeiffer issued a Second Level Response granting Plaintiff a rehearing on the grounds that Plaintiff was inappropriately denied witness statements or testimony at his hearing, in violation of due process and the California Code of Regulations, title 15, section 3315(e).  (Second Level Appeal Response (ECF No. 20, Ex. D at 29-30.))  The Chief Deputy Warden found that while Defendant Lesniak had the authority to exclude witness statements on the basis of relevance, his failure to ask Plaintiff if he had any further questions of his witnesses that were not reflected in the IE Report constituted a procedural defect.  Id.

Plaintiff's RVR was reheard on November 21, 2014 (Pl.'s Surreply (ECF No. 25) at 11), and Plaintiff was once again found guilty and referred to the ICC for a possible SHU term.  (Pl.'s Mot. to File Am. Compl. (ECF No. 24) at 25.)  Neither party provides further detail on that determination, and it therefore is unclear whether Plaintiff was placed in SHU, for how long, or whether he received credit for his previous sentence.

## VI.    Due Process Legal Standard

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of segregation. See id. at 466-68. Liberty interests created by state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. The minimum procedural requirements that must be met in such proceedings are:  (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some

11

evidence" standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached. . . ." Hill, 472 U.S. at 455-56 (emphasis added).

## VII.   Defendant Lesniak's Summary Judgment Motion

Defendant Lesniak moves for summary judgment in his favor on several grounds. First, he states there is uncontroverted evidence that the May 14, 2014 incident was not video-recorded. Second, he argues that notwithstanding the Second Level Appeal finding, he satisfied the requirements of due process in conducting Plaintiff's RVR hearing. Third, he argues that even if Plaintiff's due process rights were violated in the first hearing, the Second Level Appeal decision granting a rehearing effectively nullified the prior violation, and thus moots Plaintiff's claim for redress. Fourth, he argues Plaintiff fails to establish that he was deprived of a liberty interest.[4]

### A.      Rehearing on the RVR

The Court first addresses Defendant Lesniak's mootness argument.

Defendant Lesniak argues that any procedural defects in Plaintiff's RVR hearing were effectively nullified when Plaintiff was granted a new hearing pursuant to his Second Level Appeal.[5] (D. Reply at 2.)  Accordingly, Plaintiff's claims against Defendant Lesniak are moot. Defendant Lesniak cites Brown v. Marshall, No. CIV S-07-0956 MCE DAD P, 2012 U.S. Dist. LEXIS 27241 (E.D. Cal. Feb. 29, 2012), in support of this

---

[4] The parties' arguments regarding the District Attorney's decision not to prosecute Plaintiff have been considered and disregarded as they have no bearing on Plaintiff's due process claims for the reasons stated in subsection (VII)(D)(2).

[5] Plaintiff responds in his surreply (ECF No. 25) that the rehearing on his RVR does not render the due process claim against Defendant Lesniak moot because due process violations occurred leading up to and during his rehearing as well. Id. at 7. Plaintiff then gives a chronological history describing the events that transpired after his RVR was ordered reissued and reheard. Id. at 7-10.  The Court will not consider this argument. Plaintiff's claims arising from the reissuing and rehearing of his RVR are not contained in the operative complaint and thus are not a subject of this lawsuit. The Court will not consider argument on claims that are not presently before the Court. Plaintiff has pending a motion to amend his complaint to add claims regarding his second RVR hearing. (ECF No. 49.)

argument. 2012 U.S. Dist. LEXIS 27241, at *30 ("[P]laintiff's procedural due process claims related to either his first or second disciplinary proceedings have been rendered moot by the subsequent re-issuing and re-hearing of the rules violation charge against him").

Brown is not dispositive here.  In Brown, the Court found that Plaintiff suffered no actual injury as a result of the due process violation.  Brown, 2012 U.S. Dist. LEXIS 27241, at *30-31 ("As plaintiff himself implicitly acknowledges, he has not incurred any actual injury" as he did not spend any additional time in administrative segregation as a result of the due process violations.).  This is because the plaintiff "received credit towards his ultimate SHU term sentence for the time he spent in administrative segregation while prison officials re-issued and re-heard his rules violation charge." Id. at 31. It was undisputed that "plaintiff did not spend any additional time in administrative segregation or the SHU because of the time it took prison officials to conduct his disciplinary proceedings." Id. In contrast, in the instant case, Defendant Lesniak presents no evidence regarding the punishment phase of Plaintiff's second hearing and the Court is without information to determine whether that hearing cured the defects of any earlier violations.

Other courts that have similarly mooted a plaintiff's due process claim upon the granting of a new hearing all found that the plaintiff suffered no injury as a result of the due process violation. See, e.g., Shotwell v. Brandt, No. C 10-5232 CW (PR), 2012 WL 6569402, at *3 (N.D. Cal. Dec. 17, 2012) (no due process violation where Plaintiff's RVR was ordered reissued and reheard, the plaintiff was found not guilty at the second hearing, and the plaintiff suffered no credit loss or any other punishment); see also Horne v. Coughlin, 155 F.3d 26, 31, n. 3 (2d Cir. 1998) (finding the plaintiff's due process claims with regard to his first hearing were rendered null after the findings and penalties were vacated and a new hearing ordered, and plaintiff suffered no loss of good time credits and no disciplinary record); Morissette v. Peters, 45 F.3d 1119, 1122

(7th Cir. 1995) (court found no injury after a due process violation in the plaintiff's first disciplinary proceedings was subsequently remedied on administrative appeal and plaintiff's sentence was adjusted so that he served no additional time in segregation); Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992) (rejecting the plaintiff's due process claims where he was granted a new hearing and was never penalized for the underlying charges); Harper v. Lee, 938 F.2d 104, 105 (8th Cir. 1991) (rejecting the plaintiff's due process claims after he was granted a new hearing to cure the procedural violations and suffered no harm as a result of the initial violations).

Here, Plaintiff states he was sentenced to eighteen months confinement in the SHU and lost ten days of privileges because of Defendant Lesniak's due process violations. Defendant Lesniak has not shown that Plaintiff's punishment was cancelled or somehow cured pursuant to the rehearing. Thus, it cannot be said at this juncture that Plaintiff was not injured.

The Court therefore rejects Defendant Lesniak's claim that the rehearing on Plaintiff's RVR effectively nullified any due process violations.

**B.     Existence of Video Footage**

Defendant argues that he is entitled to summary judgment because there is no evidence that he violated Plaintiff's due process rights by failing to review video evidence. This is because the uncontroverted evidence shows that the incident at issue was not video recorded.

The Court agrees there is no evidence on the record that there ever existed video footage of the incident in question.  Plaintiff has moved to stay the proceedings to conduct further discovery on this issue, however, as discussed, that motion will be denied.  Plaintiff points to no facts to dispute Defendant Lesniak's claim that the May 14, 2014 incident was not videotaped.

Plaintiff's claim that Defendant Lesniak violated his due process rights by refusing to review video evidence should be summarily adjudicated in Defendant's

favor.

**C.    Deprivation of a Liberty Interest**

Defendant Lesniak also argues Plaintiff was not deprived of a liberty interest, as he was not subjected to an "atypical and significant hardship." Sandin, 515 U.S. at 484. Defendant Lesniak argues it was not he who assessed Plaintiff the eighteen month SHU term; he merely referred Plaintiff's case to the ICC for possible confinement in the SHU while the ICC imposed the actual sentence.  Furthermore, loss of good time credits has no effect on a prisoner serving a life sentence.  In Defendant Lesniak's view, the only liberty interest Plaintiff has been deprived of was his ten days loss of privileges.

The Court must reject this argument.  One cannot conclude that Defendant Lesniak is not responsible for placing Plaintiff in the SHU merely because he only referred Plaintiff for a possible SHU term and another committee imposed that term.  Based on the evidence presently before the Court, a reasonable juror could conclude Plaintiff was assessed an eighteen month SHU term on the basis of Defendant Lesniak's findings at the RVR hearing that Plaintiff was guilty of Battery on a Peace Officer.

The inquiry as to whether Plaintiff suffered an "atypical hardship" under Sandin is fact specific. Jackson v. Carey, 353 F.3d 750, 756 (9th Cir. 2003).  While it is true that confinement in the SHU does not invoke a liberty interest per se, Sandin, 515 U.S. at 485-86, here, there are sufficient facts from which a reasonable juror could conclude that Plaintiff's eighteen month confinement in the SHU, during which he lost privileges, lost his personal property, and was further isolated from his family, amounted to an "atypical hardship."  See Jackson, 353 F.3d at 756 (plaintiff's allegations that he lost privileges afforded to those in the general population, had has property confiscated, and was separated from his family during his SHU term sufficient to allege an atypical hardship.)  Defendant Lesniak's argument on this point therefore lacks merit.

**D.    Procedures Afforded During RVR Hearing**

Plaintiff alleges that his due process rights were violated during the RVR hearing when Defendant Lesniak "denied all of Plaintiff's witnesses," refused to review the IE Report, and did not admit Plaintiff's own written statement into evidence.  (ECF No. 20 at 4; FAC at 14.)  Defendant Lesniak counters that the record clearly documents that he "reviewed the IE Report," he considered Plaintiff's own statements, and he did not "deny" Plaintiff's witnesses;  Plaintiff can point to no evidence showing otherwise.  (Def's Reply (ECF No. 21) at 3.)  Thus, Defendant Lesniak argues Plaintiff was afforded every procedure required to satisfy due process.

Examining the <u>Wolff</u> factors set forth above, there is no dispute that Plaintiff received written notice of the charges against him in the form of an RVR issued May 22, 2014.  Furthermore, regardless of whether the RVR hearing took place on June 20, 2014 or June 4, 2014, the undisputed facts show Plaintiff received more than the 24 hours' notice to prepare his defense.  Additionally, there is no evidence Plaintiff suffered from any disability that entitled him to representation during the hearing.

Plaintiff's procedural due process claim thus centers on whether Plaintiff was afforded the right to call witnesses in his defense and whether Defendant Lesniak in fact considered the evidence he says he relied on in reaching his decision.

**1.    Witnesses**

Defendant Lesniak first appears to contend that, because he reviewed Plaintiff's witness statements in the IE Report, Plaintiff was not "denied all of his witnesses." (ECF No. 21 at 3.) In other words, although Plaintiff was denied live witness testimony, the statements of his witnesses were considered.  Defendant Lesniak argues that under <u>Wolff</u>, Plaintiff did not have a due process right to have witnesses testify at his disciplinary hearing;  Lesniak documented his review of the statements contained within the IE Report and determined that the witnesses could offer nothing of further relevance;  thus, Defendant Lesniak afforded Plaintiff all the process required with

16

regard to Plaintiff's witnesses.  (ECF No. 21 at 3.)

Under <u>Wolff</u>, an inmate does not have the right to cross-examine and confront witnesses. 418 U.S. at 568. However, the court in <u>Wolff</u> held that an inmate in a disciplinary proceeding should be allowed to call witnesses in his own defense so long as "permitting him to do so would not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566.   The court also noted that it "would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." <u>Id.</u> In this regard, prison officials are entitled to a substantial degree of flexibility and discretion. <u>Id.</u> Contrary to Plaintiff's contention, an official is not required to state his reasons for denying a witness with a high degree of specificity.  <u>Id.</u> Indeed, an official is not even required to put his reasons in writing, so long as he states them at some point.  <u>Ponte v. Real</u>, 471 U.S. 491, 496 (1985).

Here, Defendant Lesniak documented his reason for declining to call the four witnesses Plaintiff requested be at his RVR hearing (Officer Salazar, Dr. Patterson, Lieutenant Waddle, and a "C Clinic Officer.")[6]  Defendant Lesniak wrote, "All of the aforementioned staff were interviewed by Investigative Employee (IE). SHO feels it is adequate to formulate a defense. SHO denied the four witnesses, based on no further relevance." (ECF No. 20, Ex. A at 16.)

On these facts, Defendant Lesniak did all that <u>Wolff</u> requires with regard to Plaintiff's witnesses.  In determining that Plaintiff's witnesses could offer no additional evidence relevant to Plaintiff's case, Defendant Lesniak exercised the discretion imparted to him by <u>Wolff</u>. 418 U.S. at 566 ("Prison officials must have the necessary

---

[6] Plaintiff argues Defendant Lesniak denied him "all" of his witnesses. (ECF No. 20 at 4; FAC at 14.) To the extent Plaintiff means to say he was denied all six of the witnesses included in the IE Report,  there is no evidence that he actually requested that all six of these witnesses be permitted to testify at his RVR hearing. <u>See Davies v. Valdes</u>, 462 F. Supp.2d 1084, 1093 (C.D. Cal. 2006) (no due process violation where there was no evidence plaintiff requested any witnesses at his disciplinary hearing).

discretion to keep the hearing within reasonable limits and to refuse to call witnesses" whether for lack of relevance, lack of necessity, or safety concerns).

Plaintiff relies on the Second Level response to Plaintiff's appeal of his RVR hearing as proof that Defendant Lesniak violated due process by denying Plaintiff's witnesses. (ECF No. 20 at 6.) In that response, officials determined that the requirements of due process had not been met in Plaintiff's RVR hearing. (ECF No. 20, Ex. C at 30.) Specifically, the appeal reviewer noted that the SHO failed to ask Plaintiff during the hearing if he had any further questions of his witnesses not reflected in the IE Report, or ask Plaintiff if Plaintiff would stipulate to what their answers would have been. Id. The reviewer also noted that under title 15, section 3315(e)(2) of the California Code of Regulations, a hearing officer has the authority to screen or limit the questions an inmate poses to any witnesses to ensure their relevancy. Id. (citing CAL. CODE. REGS. tit. 15, § 3315(e)(2)). The reviewer implied that the hearing officer erred in excluding Plaintiff's witnesses altogether based on relevancy alone.

First, California regulations do not dictate the outcome of the federal due process analysis and the Title 15 regulations governing the conduct of prison officials do not entitle an inmate to civil redress for their violation. See e.g., Vasquez v. Tate, No. 1:10-cv-1876-JLT (PC), 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012); Davis v. Powell, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012). Violation of state regulations alone does not constitute a constitutional violation.

Similarly, simply because the procedures afforded to an inmate were deemed deficient by state officials does not mean they were deficient under the constitution; the procedures need only satisfy the requirements outlined by Wolff. Walker, 14 F.3d at 1420. As noted, Wolff does not require an official to document with specificity his reasons for denying Plaintiff's witnesses. Plaintiff has not cited to, and the Court is unaware of, any authority reading Wolff to require a hearing officer to offer an inmate the opportunity to ask supplemental questions of his witnesses *after* the officer has

18

already considered their statements and determined the witnesses can offer nothing of further relevance. Indeed, the Second Level Response reviewer conclusion does not appear to be based on any particular authority. (ECF No. 20, Ex. C at 30.)

As Plaintiff has not demonstrated how Defendant Lesniak's conduct in excluding Plaintiff's witnesses was constitutionally deficient, Defendant Lesniak is entitled to judgment in his favor.

### 2.     Other Evidence Considered

Plaintiff's claims that Defendant Lesniak refused to review the IE Report or Plaintiff's written statement are equally unavailing.   The RVR hearing report clearly states that Defendant Lesniak "reviewed the IE Report" and Plaintiff's "statement was considered at the hearing."   (ECF No. 20, Ex. A at 16.)     Plaintiff offers nothing to support his belief that the IE Report and statement were not considered.    That Defendant Lesniak may not have included Plaintiff's statement in Plaintiff's RVR file is irrelevant; he merely needs state he considered it.   Plaintiff has provided no evidence to the contrary.

Finally, the Court addresses the discrepancy regarding the date of the RVR hearing. (FAC ¶ 30, ECF No. 20 at 6-8, ECF No. 25 at 6.) In this regard, Plaintiff points out that Lesniak claims to have adjudicated the hearing on June 4 but says Plaintiff was provided a District Attorney Referral Status Report prior to the hearing. (ECF No. 20, Ex. A at 15.) That Referral Status Report is dated June 9, 2014. Plaintiff contends that only "logical explanation" for Defendant's misdating of the RVR report is that Lesniak originally intended to conduct the hearing on June 4, but after reviewing the IE Report and witness statements, "wasn't comfortable" and determined to "find a way to suppress Plaintiff's evidence." (ECF No. 25 at 5-6.) Thus, he delayed the hearing until June 20, 2014.

This theory is pure speculation.  R.W. Beck & Assocs. v. City & Borough of Sitka, 27 F.3d 1475, 1480 n.4 (9th Cir. 1994) ("Arguments based on conjecture or speculation

are insufficient to raise a genuine issue of material fact . . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal quotation marks omitted) (quoting Liberty Lobby, 477 at 242)). Moreover, Defendant Lesniak's motives have no evidentiary value for the purposes of this summary judgment motion.[7] .

The facts show that Defendant Lesniak documented his consideration of Plaintiff's written statement and the IE Report in reaching his decision. Plaintiff has offered no evidence to challenge the veracity of Defendant Lesniak's documentation. Defendant Lesniak is entitled to judgment in his favor on this point as well.

### E. Conclusion

For the reasons set forth above, the Court finds Plaintiff has failed to meet his burden of presenting evidence to show there is a genuine issue of material fact on his due process claim. Defendant Lesniak is thus entitled to judgment in his favor. The Court will recommend granting Defendant Lesniak's summary judgment motion in full.

## VIII. Plaintiff's Cross-Motion for Summary Judgment

Plaintiff filed a cross-motion for summary judgment against Defendant Lesniak, arguing that he is entitled to judgment as a matter of law because the undisputed facts show that Defendant Lesniak violated Plaintiff's due process rights during the RVR hearing. (ECF No. 19.) In support, he refers to his opposition to Defendant Lesniak's summary judgment motion.[8] Id.

As Plaintiff will bear the burden of proof at trial, in order for summary judgment to be granted in Plaintiff's favor he must demonstrate, with affirmative evidence, that "no

---

[7] To the extent this theory is provided to reflect on Defendant Lesniak's credibility, the Court does not weigh credibility on summary judgment. See Liberty Lobby, 477 U.S. at 255.

[8] Plaintiff's opposition does not include a separate motion for summary judgment; instead, Plaintiff seems to state that the arguments he offers to oppose Defendant Lesniak's summary judgment motion also serve to support Plaintiff's motion.

reasonable trier of fact could find other than for" Plaintiff.  <u>Soremekun, Inc.</u>, 509 F.3d at 984.  In his opposition, Plaintiff argues that based on the evidence, it is "undisputed" Defendant Lesniak violated Plaintiff's due process rights during the RVR hearing. (ECF No. 20 at 10.)

The Court has already found that Defendant Lesniak is entitled to summary judgment because he has met his burden of showing there exists no evidence to support Plaintiff's position at trial.  Thus, Plaintiff has fallen far short of his burden of demonstrating that no reasonable trier of fact could find for any party other than Plaintiff. The Court will therefore recommend denying Plaintiff's cross-motion for summary judgment.

## IX.    Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for a twenty-one day extension of time to file a surreply (ECF No. 22) is GRANTED, and Plaintiff's time for filing a surreply is extended NUNC PRO TUNC to December 2, 2015;

2.  Plaintiff's motion for leave to file a surreply (ECF No. 22) is GRANTED;

3.  Plaintiff's motion to stay the proceedings (ECF No. 20) is DENIED; and

IT IS HEREBY RECOMMENDED that:

4.  Defendant Lesniak's motion for summary judgment (ECF No. 18) be GRANTED in full;

5.  Plaintiff's motion for partial summary judgment against Defendant Lesniak (ECF No. 19) be DENIED; and

6.  Defendant Lesniak and Plaintiff's Fourteenth Amendment due process claim be DISMISSED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendation,

any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Any reply to the objections shall be served and filed within **fourteen** (14) days after service of the objections.   The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   August 24, 2016                /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE